AMERICAN LAND TITLE ASSOCIATION and New York State Land Title Association, Plaintiffs,

v.

Robert L. CLARKE, in his official capacity as Comptroller of the Currency, and the Office of the Comptroller of the Currency, an Agency of the United States, Defendants,

and

The Chase Manhattan Bank, N.A., Intervenor–Defendant.

No. 89 CIV. 6939 (MJL).

United States District Court, S.D. New York.

Aug. 7, 1991.

---

Pierson Semmes and Filey by William T. Finely, Jr., Sheldon E. Hochberg, David F.B. Smith, Washington, D.C., Olwine, Connelly, Chase, O'Donnell & Weyher by Charles M. McCaghey, Grace M. Healy, New York City, for plaintiffs.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Kay Gardiner, Gabriel W. Gorenstein, New York City, Office of the Comptroller

of the Currency, of council by Mark L. Leemon, Washington, D.C., for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is plaintiffs' motion pursuant to Fed.R.Civ.P. 56 for summary judgment. Defendants cross-move for dismissal under Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, defendants' motion is granted and plaintiffs' motion is denied.

## BACKGROUND

The OCC is the federal agency charged with the supervision and regulation of national banks and the administration of the National Bank Act of 1864 (the "NBA"). 12 U.S.C. §§ 1 et seq. National banks are permitted to engage in their authorized activities through operating subsidiaries, and the provisions of the Federal banking laws are applicable to those operating subsidiaries. 12 C.F.R. § 5.34(d)(1) requires a national bank to notify the Deputy Comptroller in the appropriate district when it proposes to perform new activities through such an operating subsidiary. The Deputy Comptroller must then review the proposal in order to determine whether or not the new activities are within the scope of a national bank's legally permissible activities. 12 C.F.R. § 5.34(d)ii.

Pursuant to the above rules, on March 3, 1989, Chase Manhattan, a national banking association subject to the NBA, notified the OCC that it intended to establish two operating subsidiaries to engage in the business of issuing title insurance. Chase Manhattan, through the subsidiaries, wished to sell title insurance, as agent, to owners and lenders in connection with residential and commercial real estate loans made by the bank and its affiliates.[1] Under Chase Manhattan's proposal, the subsidiaries would perform certain services, including reviewing title abstracts, obtaining updated abstract and title opinions, preparing preliminary and final title insurance commitments on behalf of insurers and providing clerical assistance incidental to the subsidiaries' activities.

The bank outlined the proposed procedures for issuing title insurance as follows:

1. there would be no obligation on the part of the borrowers to use the services of the subsidiaries;

2. the lender's decision to grant or deny a mortgage would not be affected by whether a borrower chose to purchase title insurance from the bank;

3. no preferential treatment would be accorded to customers who chose to obtain title insurance through the bank, and;

4. customers would be advised of the services offered by the subsidiaries and of the relationship between the lender and the subsidiaries.

The proposed plan would include procedures that would guarantee the subsidiaries' compliance with all federal and state laws and regulations applicable to title insurance activities.

By letter dated June 20, 1989, the Comptroller approved Chase Manhattan's proposal. In granting approval, the Comptroller relied upon two provisions of the Act: 12 U.S.C. § 24 (Seventh)[2] and 12 U.S.C. § 371.[3] The Comptroller specifically found that title insurance falls within the incidental powers of a national bank, noting that title insurance agency activities are both convenient and useful to the bank's express power to make real estate loans and that there has been judicial recognition that certain forms of insurance related to traditional lending activities of banks are within the incidental powers of a bank.

[1] Chase Manhattan requires customers to obtain title insurance as a condition to obtaining mortgage loans in order to protect the lender's security interest in the mortgaged property.

[2] 12 U.S.C. § 24 (Seventh) provides, in pertinent part, that national banks may "exercise ... all such incidental powers as shall be necessary to carry on the business of banking."

[3] 12 U.S.C. § 371 expressly authorizes national banks to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interest in real estate."

Plaintiffs challenge the validity of the Comptroller's ruling. They argue that the sale of title insurance is outside the scope of authority conferred on national banks by the NBA, and is contrary to judicial precedent. They contend that 12 U.S.C. § 92, which permits national banks doing business in towns with populations of less than 5,000 to "act as the agent for any fire, life, or other insurance company," prohibits national banks in larger towns from engaging in the business of title insurance. In essence, plaintiffs seek a declaratory judgment that the Comptroller acted outside of his scope of authority and contrary to the NBA when he granted approval to Chase Manhattan to operate subsidiaries engaged in the business of issuing title insurance.

Defendants ask that the Court uphold the Comptroller's ruling that title insurance activities are not prohibited by 12 U.S.C. § 92, are related to the traditional lending powers of banking, are incidental to the business of banking and therefore fall within the meaning of the incidental powers clause of the NBA. They argue that § 92 relates only to the sale of traditional insurance, which is substantially unlike title insurance. Finally, defendants argue that the Comptroller's decision to authorize the sale of title insurance by national banks and their subsidiaries must be accorded great deference by this Court, as this Court is reviewing an agency's interpretation of its governing statute.

## DISCUSSION

### I. Decision of the Comptroller

In a letter dated June 20, 1989, Senior Deputy Comptroller J. Michael Shepard approved Chase Manhattan's application to operate a subsidiary engaged in the business of title insurance activities. Mr. Shepard relied on OCC Interpretive Letter # 368, dated July 11, 1986 which concluded that national banks are authorized to act as agents for the sale of title insurance. In Letter # 368, in analyzing the incidental powers clause, the Comptroller discussed two tests the courts have used when determining whether a given activity is inciden-

tal within the meaning of 12 U.S.C. § 24. Letter # 368 at 77,838.

### A. The Defendants' Arguments

First, under *Arnold Tours, Inc. v. Camp*, 472 F.2d 427 (1st Cir.1972), an activity has been defined as incidental to the business of banking if it is "convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act." *Id.* at 432. *See also, M & M Leasing Corp. v. Seattle First National Bank*, 563 F.2d 1377 (9th Cir. 1972); *Guaranty Mortg. Co. v. Z.I.D. Associates*, 506 F.Supp. 101 (S.D.N.Y.1980). Second, the Comptroller has found that an activity is incidental to the business of banking where the activity in question is similar to a permitted activity. *See e.g., Independent Bankers Assoc. v. Heimann*, 613 F.2d 1164 (D.C.Cir.1979) *cert. denied*, 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980). Although the OCC views the *Arnold Tours* test as too restrictive (and has maintained this position since the issuance of Letter # 368: *See e.g., American Ins. Assoc. v. Clarke*, 865 F.2d 278 (D.C.Cir. 1988); *Securities Industry Assoc. v. Clarke*, 885 F.2d 1034, 1048 (2d Cir.1989)) it found that under either the "convenient and useful" or the "similar to a permitted activity" test, title insurance activities are incidental to the business of banking.

The Comptroller found that title insurance meets the *Arnold Tours* test in that it is convenient and useful in connection with making real estate loans, an express power granted to national banks. 12 U.S.C. § 371. The Comptroller observed that banks often require title insurance coverage to protect against contingencies that would prevent the bank from being able to foreclose on the collateral. He noted that it would be both convenient and useful for borrowers to discuss and purchase title insurance coverage while negotiating a real estate loan. The Comptroller clearly views title insurance as a logical compliment to the review of abstracts of title, legal title opinion, and title insurance commitments already conducted by banks in connection with making real estate loans. Similarly,

every loan made by a bank that is collateralized by a parcel of real estate is conditioned on an examination of the relevant land records. National lenders who make real estate loans regard title policy as an essential part of their loan package, helping them to transfer these loans as they would other commercial property. Powell on Real Property, ¶ 1028 at 92–3.

██ Furthermore, title insurance is a contract under which the insurer indemnifies the insured for a specific amount against any loss through then existing defects in title. Powell on Real Property, ¶ 1029 at 92–5–29–7. The lender's policy protects the lender's interest in that it insures a valid enforceable lien in the event of a default. In this sense, the Comptroller found that title insurance is similar to an extension of credit, a traditional bank function. Banks frequently prepare and review abstracts of title and legal title opinions concerning mortgaged real property. In this respect, the Comptroller concluded that title insurance, like credit life insurance, is a limited type of coverage similar to a traditional bank practice connected to an extension of credit and therefore, incidental to the business of banking.

A similar position was adopted by the D.C. Circuit in *Independent Bankers Assoc.*, 613 F.2d 1164. There the court observed that credit life insurance (which includes health, accident and life insurance issued as protection for a loan) is essential where ordinary loans on personal security are made, is a limited type of coverage that protects loans, and is connected to an extension of credit. For these reasons, the court held that credit life insurance is incidental within the meaning of 12 U.S.C. § 24 (Seventh) *Id.* at 1170.

### B. The Plaintiffs' Arguments

Plaintiffs rely on *Saxon v. Georgia Ass'n of Independent Ins. Agents, Inc.*, 399 F.2d 1010 (5th Cir.1968), in which there was a dispute over a national bank's authority to issue broad forms of insurance. The *Saxon* court held that the Office of the Comptroller acted outside its scope of authority and contrary to § 92 when it granted national banks the very broad and unlimited power to "act as agent in the issuance of insurance which is incidental to banking transactions." [4] *Id.* at 1012. However, in Letter # 368, the Comptroller distinguished title insurance from the types of traditional insurance at issue in *Saxon.* He noted that title insurance is unique and unlike the broad forms of insurance activities regulated by 12 U.S.C. § 92 and therefore not barred by the *Saxon* decision. Title insurance differs from other forms of insurance since it insures title as of the date of the policy against loss by reason of situations arising out of past conduct. Powell on Real Property, ¶ 1030, at 92–7. There are no risks insured based on actuarial computations of future probabilities, as in most forms of insurance. In this respect, title insurance is similar to municipal bond insurance, an insurance activity that has been held to be incidental to the business of banking and not prohibited by 12 U.S.C. § 92. *See, e.g., American Ins. Ass'n v. Clarke*, 656 F.Supp. 404, 410 (D.D.C.1987), *aff'd*, 865 F.2d 278 (D.C.Cir. 1988) (municipal bond insurance distinguished from other types of insurance based on the absence of actuarial computations in determining risk).

### II. Scope of Review

██ The principles regarding judicial deference to agency interpretation of its governing statute are outlined in *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). In reviewing an agency made rule, the first issue the court must decide is whether Congress has addressed the specific question at issue. If congressional

---

4. Pursuant to the OCC ruling at issue in *Saxon*, national banks began to engage in the business of broad forms of automobile, home, casualty and life insurance. *Id.* at 1012. The 5th Circuit, in determining whether the Comptroller had acted within the statute, read § 92 as an express limitation of the incidental powers granted by 12 U.S.C. § 24 (Seventh) by expressly authorizing the relevant insurance sales only in towns with populations of less than 5,000, and held that the OCC ruling was contrary to § 92. *Id.* at 1016.

intent is clear in the statute, the court must enforce that intent. If however, Congress has not addressed the specific question at issue, the court must determine whether the agency's ruling is based on a reasonable interpretation of that statute. In upholding an agency's decision "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted, ... or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. The agency interpretation is controlling unless it is "arbitrary, capricious or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782. These principles of judicial review of agency interpretation apply to the Comptroller's interpretation of the NBA. *American Insurance Assoc.*, 865 F.2d at 281; *Securities Industry Assoc.*, 885 F.2d at 1042. Thus, under the principles outlined in *Chevron* and its progeny, this Court must defer to the Comptroller's decision if it is rational and consistent with the statute.

Plaintiffs argue that the Comptroller's approval of the Chase Manhattan proposal violates the NBA and is not entitled to deference. In support, plaintiffs rely heavily on *Saxon*, 399 F.2d 1010, discussed *supra*. Plaintiffs argue that title insurance falls within the scope of § 92 and, inasmuch as Chase Manhattan has not indicated that it intends to limit its title insurance activities to towns with populations of less than 5,000, the Comptroller's approval of the Chase Manhattan proposal is contrary to the statute. 12 U.S.C. § 92.[5]

■ However, the Comptroller is entitled to "look beyond a label given a certain activity to determine whether or not it is permissible." *American Ins. Assoc.*, 656 F.Supp. at 408. The Comptroller is not precluded from determining that title insurance falls outside of the scope of activities discussed in § 92 even though it is labeled "insurance". This point is illustrated by the fact that courts have held in the past that various types of "insurance" are incidental to the business of banking and not prohibited by § 92. *See e.g., American Ins. Assoc.*, 865 F.2d 278 (holding that Comptroller's determination that municipal bond insurance falls within the scope of the incidental powers clause is rational under the NBA) and *Independent Bankers Assoc.*, 613 F.2d at 1170 (holding that Comptroller's finding that the sale of credit life insurance falls within the incidental powers clause is rational under the NBA).

## III. The Conclusion of This Court

As noted above, 12 U.S.C. § 24 (Seventh) grants national banks the authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." This clause has been broadly construed to include activities which are "convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act." *M & M Leasing Corp.*, 563 F.2d at 1382.

Although the Comptroller argues that the *Arnold Tours* test, (used to determine whether a given activity is "incidental", discussed *supra*, at § I.A) is unnecessarily restrictive, he has found that even under the *Arnold Tours* test, title insurance is incidental to the business of banking within the meaning of 12 U.S.C. § 24 (Seventh). As we agree that title insurance agency activities satisfy the requirements of the *Arnold Tours* test, we decline to address the Comptroller's position that the test is too restrictive.

Title insurance is commonplace where loans collateralized by a parcel of real property are made and has, in effect, become an essential element of the real estate package. Therefore, it is a rational conclusion

**5.** There is some dispute as to whether *Saxon* was correctly decided. *Independent Ins. Agents v. Board of Governors*, 736 F.2d 468, 477 n. 6 (8th Cir.1984). However, whether or not *Saxon* was correctly decided, it does not control the outcome of the case at bar. As discussed, *supra, Saxon* involved national banks' authority to sell broad forms of automobile, home, casualty and liability insurance, activities *specifically prohibited* by the NBA (12 U.S.C. § 92). *Saxon*, 399 F.2d at 1012. As far as the instant case, the NBA does not specifically prohibit national banks from issuing title insurance, and Congressional intent is therefore unclear.

that the sale of title insurance in connection with real estate loans made by a national bank is incidental to the express power of a national bank to make real estate loans. Further, it is rational to conclude that title insurance, like credit life insurance, is an activity considered incidental to the business of banking in that it is a limited type of coverage that protects the lender in the event of a default.

We find that it is neither arbitrary nor capricious to view 12 U.S.C. § 92 as a supplemental powers provision, not a limitation on national banks' incidental powers under 12 U.S.C. § 24 (Seventh). Further, even if § 92 were viewed as a limitation, we find that the Comptroller's determination that title insurance is so significantly different from the broad forms of insurance addressed in § 92 as to remove title insurance from the scope of § 92 is rational under the NBA.

■ The question before this Court is not whether the NBA expressly authorizes national banks to engage in the business of title insurance agency activities. Rather, the question is whether the Comptroller's determination that a bank may engage in the business of title insurance agency activities is rational under the NBA. The Comptroller determined that the activities proposed by Chase Manhattan are incidental to banking business in that they are convenient and useful in connection with its express power to make real estate loans and that they are similar to an extension of credit, an activity already performed and permitted. As the Comptroller's determination was neither erroneous nor arbitrary or capricious, this Court will not disturb it. Therefore, defendants' motion to dismiss is granted and plaintiffs' motion for summary judgment is denied.

It Is So Ordered.